IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALAN J. CHESKIEWICZ, a minor, by his parents and natural guardians, ALLAN J. CHESKIEWICZ and RITA M. CHESKIEWICZ, and ALLAN J. CHESKIEWICZ and RITA M. CHESKIEWICZ, in their own right, | : : : : : : | Civil Action No. 02-3583 Judge Shapiro |
| Plaintiffs, | : : : | |
| v. | : : | |
| AVENTIS PASTEUR, INC., Individually and as successor in interest to CONNAUGHT LABORATORIES, INC., PASTEUR MERIEUX and PASTEUR MERIEUX CONNAUGHT, et al., | : : : : : : | |
| Defendants. | : | |

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR REMAND

COME NOW the plaintiffs, by and through counsel, and in supplement to their previously filed memorandum of law in support of their Motion For Remand, state the following:

I.    INTRODUCTION.

At the conclusion of the hearing held in this matter on Monday, July 8, 2002, the Honorable Judge Norma Shapiro requested plaintiffs' counsel to refer the Court to those specific paragraphs of plaintiffs' Complaint wherein it is alleged that the minor plaintiff, Alan J. Cheskiewicz (hereinafter "A.J."), was injured as a result of his having been injected with thimerosal-containing vaccines manufactured by the resident defendants, Aventis Pasteur, Inc., (hereinafter "Aventis"), and GlaxoSmithKline, (hereinafter "Glaxo").  Accordingly, the first portion of this memorandum will be devoted to

responding to that very question, and the second half, to addressing the various points raised in defendants' recently filed Opposition To Plaintiffs' Motion For Remand.

II.    PLAINTIFFS' COMPLAINT ALLEGATIONS AS TO INJURY FROM THIMEROSAL-CONTAINING VACCINES MANUFACTURED BY THE RESIDENT DEFENDANTS.

This is a suit for injuries and damages resulting from A.J. 's exposure not to a single thimerosal-containing vaccine, but rather to a minimum of ten (10) thimerosal-containing vaccines that were administered to him over a specific period of time - from when he was three (3) days of age' to approximately 19 months of age.  One or more of these thimerosal-containing vaccines was manufactured, placed into the stream of commerce and ultimately sold to his pediatrician by several entities, including the resident defendants, Aventis and Glaxo.  The specific allegations of plaintiffs' Complaint reflecting this are as follows:

Paragraph 4 of plaintiffs' Complaint alleges that Aventis Pasteur, Inc. is the successor in interest to Connaught Laboratories, Inc., Pasteur Merieux and Pasteur Merieux Connaught and is a Delaware corporation principally located in Pennsylvania. (*See:* Exhibit B, a printout obtained from the Corporations section of the Pennsylvania Department of State's website.)  Paragraph 5 of the Complaint alleges that GlaxoSmithKline is the successor in interest to SmithKline Beecham Corp. and SmithKline Beecham Laboratories and is a Pennsylvania corporation, with its principal place of business in Pennsylvania.  (*See:*  Exhibit B, a printout obtained from GlaxoSmithKline's website, as well as one obtained from the Corporations section of the Pennsylvania Department of State's website.).

Under the "General Allegations Common To All Counts" portion of the Complaint, it is alleged at paragraph 19 that, as previously noted, plaintiffs' suit arises out of the neurological injuries suffered by A.J. as a result of his having been exposed to toxic levels of thimerosal "that was, at all times relevant, present in the vaccines administered to the minor plaintiff during specific time periods, all as more fully set forth below."  Paragraph 22 identifies Aventis and Glaxo, as well as Wyeth, Abbott Laboratories, Merck & Co., Inc. and Pfizer, Inc.,[1] as the designers, manufacturers, packagers, distributors and sellers of those thimerosal-containing vaccines "that the minor plaintiff ultimately received" and further states that these entities will hereinafter be referred to as the "Vaccine Manufacturers." (Emphasis added.)  Paragraph 23 further alleges that these Vaccine Manufacturers, including Aventis and Glaxo, purchased the thimerosal from the other named defendants, the "Thimerosal Manufacturers", and subsequently intentionally placed the toxic substance into the vaccines "ultimately injected into the minor plaintiff during certain time periods, all as more fully set forth below." (Emphasis added.)

Paragraphs 28-29 allege that from May 18, 1994, through December 7, 1995, A.J. was administered not less than 14 vaccines and that not less than ten (10) of those vaccines introduced into his body between 12-25 micrograms of toxic ethyl mercury[2]. Paragraphs 30-32  then aver that the 10 thimerosal-containing vaccines A.J. received were manufactured by the previously identified "Vaccine Manufacturers" (including Aventis and Glaxo); that said defendants (including Aventis and Glaxo) added thimerosal to "the 10 vaccine doses ultimately administered to A.J.", prior to their making their way

---

[1] Merck & Co., Inc. and Pfizer, Inc., have since been voluntarily dismissed without prejudiced.
[2] Paragraph 21 of the Complaint alleges that thimerosal is by weight 49.6% ethyl mercury.

to his pediatrician; and, that "these cumulative doses of toxic ethyl mercury were the direct and proximate cause of A.J.'s suffering mercury poisoning and his sustaining devastating neurological injuries that are permanent in nature."

For purposes of further identifying the aforesaid thimerosal-containing vaccines, the Complaint also incorporates by reference copies of A.J.'s vaccination records, which are attached and marked as Exhibit A. (*See:* ¶28.) These vaccine administration records list the various thimerosal-containing vaccines that were administered to A.J. and manufactured by, among others, the resident defendants, Aventis and Glaxo. For the Court's convenience, Plaintiffs attach hereto page 3 of Exhibit A to the Complaint, which is also marked as Exhibit A to this memorandum.

At the bottom left half of that page, under the section marked "DTP"[3], are listed four (4) thimerosal-containing vaccines that were administered to A.J. from July 2, 1994, though December 7, 1995. Three of them are referenced as "ACT HIB CONN", and the last, as "TRIPEDIA CONN". The initials "CONN" stand for Connaught Laboratories, Inc., the predecessor of resident-defendant, Aventis. Connaught Laboratories, Inc. (now Aventis) manufactured and sold three of the thimerosal-containing vaccines that were administered to A.J. under the brand name "ACT HIB", as evidenced by the *Physicians' Desk Reference*, 1995 at 7, 901-904, copies of which are attached hereto as Exhibit C-1.[4] Connaught Laboratories, Inc. also manufactured and sold a fourth thimerosal-containing vaccine that was administered to A.J. under the brand name "TRIPEDIA", as evidenced by the *Physicians' Desk Reference*, 1995 at 7, 919-922, copies of which are attached hereto as Exhibit C-2.

---

[3] DTP refers to the diptheria pertussis tetanus vaccine, or variations thereof.
[4] This indicates that resident-defendant, Glico's predecessor, SmithKline Beecham, was the distributor of the Act Hib.

4

At the bottom right half of Exhibit A, under "HEP B"[5], are listed three more of the thimerosal-containing vaccines that were administered to A.J. These entries note that he was administered ENERGIX SKB or ENERGIX B SKB from May 18, 1994, through November 18, 1994. The initials "SKB" stand for SmithKline Beecham, the predecessor of Glaxo. SmithKline Beecham (now Glaxo) manufactured and sold these three thimerosal-containing vaccines under the brand name "ENERGIX", as evidenced by the *Physicians' Desk Reference*, 1994 at 20, 2255-2257, copies of which are attached hereto as Exhibit D.

The remaining paragraphs 34-94, Counts 1-8, set forth plaintiffs' causes of action of strict products liability, negligence, breach of warranties, fraud, gross negligence and the adult plaintiffs' individual claims for medical expenses, <u>as a result of his having exposed to the thimerosal supplied by the defendant "Thimerosal Manufactures" and contained in the ten (10) various thimerosal-containing vaccines designed, manufactured, distributed and sold by the defendant "Vaccine Manufacturers", including the in-state defendants, Aventis and Glaxo</u>. (Emphasis added) Each and every Count references and incorporates the previous counts and paragraphs of the Complaint, including, of course, that Aventis and Glaxo were two of the entities that designed, manufactured, distributed and sold, *etc.*, several of the thimerosal-containing vaccines <u>that were administered</u> to A.J., and as more specifically identified in his vaccination records. (Emphasis added) *See:* ¶¶ 35-36; 43, 53, 65, 77, 86, 91.

Moreover, each and every Count concludes with an allegation that A.J.'s injuries and plaintiffs' resulting damages were directly and proximately caused by his having been repeatedly administered and exposed to the thimerosal contained in the thimerosal-

---

[5] Hep B refers to the hepatitis B vaccine.

containing vaccine doses manufactured by the "Vaccine Manufacturers", which include the resident defendants, Aventis and Glaxo. *See*: ¶¶ 41, 46, 58, 70, 82 89, 92 and 94. Accordingly, the Complaint, which incorporates the data contained in A.J.'s vaccination records, clearly sets forth sufficient factual allegations that A.J.'s injuries were caused by, among others, his exposure to those specific thimerosal-containing vaccines manufactured and distributed by Aventis and Glaxo under the brand names ACT HIB, TRIPEDIA and ENERGIX.

### III.    REBUTTAL TO WYETH'S OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND.

### A.    Summary Of Rebuttal Argument.

At a time when, faced with a motion for remand, this Court is bound to construe the removal statute strictly and to resolve any ambiguities as to the current status of controlling substantive state law in favor of the non-removing party,[6]and when each and every United States District Court that has thus far considered the validity of the removal of a thimerosal-related personal injury suit has ruled in favor of remand, the defendants want this Court to find that the resident vaccine manufacturers were fraudulently joined. Despite defendants' assertions that the law supports their position, they cannot escape the fact that the federal courts of Washington, California, Oregon, Florida and now Mississippi have all rejected the theories that thimerosal-based personal injury claims are created by, or arise from the National Vaccine Injury Compensation Act (hereinafter "Vaccine Act"); that the Vaccine Act presents substantial federal issues; that the Vaccine Act preempts their state law claims; and, that there exists no possibility that their

---

[6] *Batoff v. State Fram Insurance Co.*, 977 F.2d 108 (3rd Cir. 1992); *Boyer v. Snap-on Tools,Corp*, 913 F.2d 108 (3rd. Cir. 1990).

respective state court could find that such claims are not vaccine-related and, therefore, not governed by the Vaccine Act.[7]

Moreover, notwithstanding the defendants' repeated references to the Secretary of Health and Human Services' (hereinafter "Secretary of HHS") Statement of Interest that claims for injury by thimerosal are vaccine-related and to the fact that the Special Masters of the United States Court of Federal Claims (hereinafter "Claims Court") have not rejected petitions for injuries alleged from thimerosal, the fact remains that even the Claims Court has not ruled on the matter. Further, while defendants rely on the findings of the United States District Court for the Southern District of Texas[8] that injury from thimerosal constitutes an injury by a vaccine, and not an adulterant, those decisions were not only wrongly decided, but issued in the context of motions to dismiss, where, unlike in the case of remand, a court decides the merits of a case.

Finally, even in the context of a motion to dismiss, the Texas court reiterated what is well-settled law, that the parents' individual claims are not governed by the Vaccine Act. *Id.* at 20. In summary, defendants make no novel arguments that have not already

---

[7] *See: Garcia, et al. v. Aventis Pasteur, Inc., et al.,* Case No. 2:02-cv-00168 (W.D. Wash. April 22, 2002); *Doherty, et al. v. Aventis Pasteur, et al.,* Case No. C01-4771-MJJ (N.D. Ca. May 17, 2002); *King, et al., v. Aventis Pasteur, Inc., et al.,* Case No. 01-1305-AS (D. Ore. June 7, 2002) (all previously appended to the Memorandum Of Law to Plaintiff's Motion For Remand); *Mead, et al. v. Aventis Pasteur, Inc., et al.,* Case No. 01-1305-AS (D. Ore. June 7, 2002); *Demos, et al. v. Aventis Pasteur f/k/a Connaught Laboratories, et al.,* Case No. 01-04504-CIV-Graham (S.D. Fla. March 21, 2002) (attached as Exhibit 9 of Defendants' Opposition To Plaintiffs' Motion For Remand); and, *McDonald, et al. v. Abbott Laboratories, Inc., et al.,* Case No. 02CV77LN (S.D. Miss. June 21, 2002) (attached hereto as Exhibit F). Plaintiff concedes that in *Strauss, et al. v. American Home Prods. Corp, et al.,* Civil Action No. G-02-226 (S.D. Tex. June 11, 2002) the United States District Court for the Southern District of Texas denied a motion for remand, yet not on the grounds of the Vaccine Act, but because the plaintiffs had been mistaken as to the citizenship of a corporate defendant they thought was a resident of Texas.

[8] *O'Connell, et al. v. American Home Prods. Corp., et al.,* Civil Action No. G-02-184 (S.D. Tex. May 7, 2002); *Blackmon, et al. v. American Home Prods. Corp., et al.,* Civil Action No. G-02-179 (S.D. Tex. May 8, 2002); *Owen, et al. s v. American Home Prods. Corp., et al.,* 2002 WL 992094 (S.D. Tex. May 8, 2002). These cases are further distinguishable in that the plaintiffs therein filed their suit in federal court. Thus, the United States District Court for the Southern District of Texas was never given the opportunity to rule in the context of a motion for remand.

been considered, cite no new controlling decision and describe no circumstances that were not already present when the above-noted federal courts granted plaintiffs' motions for remand. Inasmuch as the weight of authority - indeed, all decisions on point - are in favor of remand and defendants have not met their very heavy burden of demonstrating that there exists no possibility that the state court here could find that any of plaintiffs' causes of action are cognizable under Pennsylvania law, this case should be remanded.

**B.      Given That Thimerosal Is Highly Toxic, It Is More Than Possible That The State Court Could Find That The Minor Plaintiffs' Injuries Are Not Vaccine-Related.**

The whole of defendants' argument that plaintiffs' claims are barred by the Vaccine Act is based upon the notion that because thimerosal was used as a preservative in multi-dose vials of some vaccines in accordance with federal regulations requiring the use of preservatives in vaccines packaged in that manner, it necessarily must be deemed to be a constituent or component of those vaccines. Quoting *Owens v. American Home Prods., supra,* defendants claim that as a preservative, thimerosal maintained "the safety, purity and potency" of said vaccines and is the very opposite of an adulterant or contaminant which, they submit, refers to intentionally added extraneous materials "that are present only because of such outside events as tampering, unsanitary condition or bad manufacturing practices." [9]

Plaintiffs' argument, as well as the rationale espoused in *Owens* and its companion cases, is flawed in several respects. First, it ignores the fact that thimerosal is highly toxic to humans. That a product is labeled as a preservative does not, in and of itself, render it safe and wholesome. Many preservatives exist today, for a wide variety products and uses, but they are not all safe for human injection.

------

[9] Defendants Opposition Memorandum at 13-14, 18.

Defendants do not deny thimerosal's toxicity. It is, after all, 50% mercury, "a dangerous cumulative poison." *The International Encyclopedia of Sciences & Technology* 233 (1st ed. 1999). This is significant because even though the defendants here, as well as the *Owens* Court, relied upon 21 C.F.R. § 610.15 for the proposition that preservatives have been defined as constituents by the HHS Secretary, they conveniently fail to address the remaining portion of that regulation, which provides, in pertinent part, that "[a]ny preservative used shall be <u>sufficiently nontoxic so that the amount present in the recommended dose of the product will not be toxic to the recipient</u>..." (Emphasis added.)

Nor do defendants cite any support for the proposition that adulteration occurs only from outside events such as tampering, unsanitary condition or bad manufacturing practices. To the contrary, the very regulation they cite, 21 U.S.C. § 351, states that a drug shall be deemed adulterated "if its container is composed, in whole or in part, of any poisonous or deleterious substance which may render the contents injurious to health." *Id.* at (a)(3).

Defendants' argument further lacks merit because it is predicated upon the characterization of thimerosal as a necessary vaccine ingredient. Plaintiffs' do not quibble with defendants' definition of constituent as an "essential element" and of extraneous substance as one "not forming an essential or vital part." [10] Plaintiffs take issue with defendants' characterization of thimerosal as an essential element to the multi dose vaccine vials into which it was placed, however. In point of fact, the very same vaccines, now packaged in single dose vials, do not contain thimerosal. Thus, it cannot credibly be said to have been an "essential or vital part" of those vaccines.

---

[10] Id. at 13, referencing <u>Webster's Ninth Collegiate Dictionary</u>.

9

Further, by theorizing that the preservative, thimerosal, cannot be construed as a separate product from the vaccines into which it was placed because vaccines are a suspension of several components, both biological and chemical, defendants are, in effect, arguing that each and every substance present inside a vaccine vial is qualifies as a vaccine component or constituent. That rationale, however, renders the adulterant/contaminant exception of the Vaccine Act without force in that it is inconceivable that the adulterant/contaminant exception of the Vaccine Act would apply to other than substances found inside the vaccine container.

Finally, while 21 C.F.R. § 610.15 requires the use of preservatives for vaccines packaged into multiple-use containers, there is no such requirement for vaccines sold in single-use vials. Thimerosal, then, was neither a necessary, nor required ingredient or component of any of the thimerosal-containing vaccines at issue, as defendants argue and the *Owens* Court incorrectly concluded. It was, in fact, an element "not forming an essential or vital part" of the various vaccines into which it was placed and its use was dictated solely by economics - a decision on the part of the vaccine manufactures to save money. Therefore, it is very reasonable to conclude that the state court could hold that plaintiffs' have asserted viable causes of action against the resident vaccine manufactures under Pennsylvania law.

C.     **The HHS Secretary's Statement Of Interest And The Claims' Court Consideration Of Thimerosal-Injury Claims Are Not Controlling On The Issue Of The Validity Of Defendants' Removal Of This Case.**

Defendants' argue that there is no possibility that the Pennsylvania state court would find that plaintiffs' causes of action are not barred because the HHS Secretary has issued a Statement of Interest that injury from exposure to thimerosal constitutes a

vaccine-related injury which must first be adjudicated in the Claims Court. Preliminarily, the position taken by the HHS Secretary is of no surprise. As the defendants point out, claims for compensation filed pursuant to the Vaccine Act are filed against the HHS Secretary, who, as the respondent to all such claims and represented by the United States Department of Justice, takes an adversarial position to a petitioner's interest. It is the function of the HHS Secretary to contest such claims.

As defendants further note, compensation awards made under the Vaccine Act's Program are funded by an excise tax levied against the vaccine manufactures. Thus, the interest of the HHS Secretary and those of the vaccine manufactures are not dissimilar, especially in light of the fact that, unlike in a civil suit, the damages compensable under the Vaccine Act's Program are limited. It is the vaccine manufacturers who stand to profit most from the HHS Secretary's position on this matter, since it would effectively bar many, if not the majority of such claims of injured minors who, as with A.J., had no knowledge - at least not within three (3) years from the first onset of their symptoms- that their neurodevelopmental injuries had been caused by being repeatedly exposed to thimerosal-containing vaccines.

Secondly, the HHS Secretary's Statement of Interest was issued as long ago as April, 2001. But, it apparently did not persuade any of the above-noted federal courts that have, nevertheless, considered and granted plaintiffs' motions for remand in cases identical to this. This is so, even where, as the defendants note, the HHS Secretary took the "extraordinary step" of filing its statement in the *King, et al. v. Aventis Pasteur, Inc.* case, *supra*, and the Florida federal court specifically addressed it in *Demos, et al. v. Aventis Pasteur f/k/a Connaught Laboratories, et al., supra.*

11

The same can be said for thimerosal injury-related claims that are being filed

under the Vaccine Act's Program. For months now, the Special Masters of the Claims

Court have not refused to consider the petitions of those minors who have chosen to file

claims for autism spectrum disorders alleged to have resulted not only from exposure to

thimerosal, but from the MMR vaccine, or both, under the Vaccine Act's Program.[11] In

the first of such claims, where injury was alleged to have been caused by both the MMR

vaccine and thimerosal, Special Master John F. Edwards observed:

> A simple, lay reading of the plain language of § 300aa-33(5)
> suggests that the Act does not encompass injuries related to "mercury,
> aluminum and other materials" in vaccines. A cursory review of the
> legislative history does not yield support for a contrary interpretation.
> Therefore, by no later than April 20, 2001, respondent shall file a
> memorandum addressing the special master's jurisdiction over the
> Gepperts' claim that Carl's injury was caused by "mercury, aluminum and
> other materials" in Carl's vaccines.

Order, *Geppert, et al. v. Secretary of HHS*, No. 00-286V (Fed. Cl. Sp. Mstr. March 21,

2001), attached hereto as Exhibit E.

Pursuant to the Special Master's Order, the HHS Secretary filed a memoranda

stating its previously mentioned position. In response thereto, the Special Master,

without resolving whether or not thimerosal fell within the definition of

adulterant/contaminant, noted that since the petitioner had acquiesced to, and the HHS

Secretary did not contest the Claims Court jurisdiction, he would continue to consider the

matter. (Emphasis added.)

The fact remains that the Claims Court has not yet ruled on the issue of whether

claims for thimerosal-related injuries must first be filed under the Vaccine Act, and this is

---

[11] Given that the law as to whether or not injury from thimerosal constitutes a vaccine injury is so unsettled
at this point in time, it is also of no surprise that those minors who, unlike A.J., are still qualified to file, are
doing so.

evident from page 7 of Exhibit 4 of Defendants' Opposition Memorandum, which is a printout from the HHS Secretary's website, dated June 25, 2002. Accordingly, neither the HHS Secretary's position, nor the fact that thimerosal injury-related claims have, and continue to be filed pursuant to the Vaccine Act persuaded any of the federal courts previously named deny plaintiffs' motions for remand, and they should not do so here.

### D.    Defendants' Argument That The Parent's Claim For Reimbursement Of Medical Expenses Are Barred Is Contrary To Pennsylvania Law.

Defendants do not assert that the Vaccine Act's tort ban applies to the individual claims of family members of those vaccinated individuals that qualify for compensation pursuant to the Vaccine Act's program. Nor could they, with any validity, as the law on that issue is settled.[12] Defendants maintain, however, that Allan And Rita Cheskiewicz' individual claims are barred in this particular instance because they are seeking to be compensated for the medical expenses they have, and will incur in treating his injuries.

Defendants' argument is based upon *Strauss, et al. v. American Home Prods.*, *supra,* yet another decision of the United States District Court for the Southern District of Texas with which plaintiffs disagree. *Strauss* is clearly distinguishable from this case, however, and defendants' reliance upon it is misplaced.

In *Straus,* the parents of a child injured from exposure to thimerosal-containing vaccines brought a civil suit against the vaccine manufactures in their own right, not in a representative capacity, claiming loss of consortium and medical expenses. The court held that the parents' claims were derivative of the child's claims, and because the child's claims were time-barred as a result of his not having timely filed a petition for compensation pursuant to the Vaccine Act, then the parents' claims were also time barred.

---

[12] Plaintiffs will not reiterate the points and authorities on this issue, but simply refer the Court to its first Memorandum of Law at 17.

13

Unlike Texas, however, Pennsylvania law holds that personal injury to a minor gives rise to two distinct causes of action, "one the parents' claim for medical expenses and loss of the minor's services during minority, the other the minor's claim for pain and suffering and for losses after minority." 124 Pa. Commw. 586, 590, 557 A.2d 48, 50 (1988). Pennsylvania law, then, views the parent's claims for medical expenses of a minor as non-derivative in nature. 26 Pa. D. & C.4th 385 (1996). It distinguishes the medical bills for which the parents are responsible, and those for which the minor will become responsible after reaching his majority.

Moreover and contrary to what defendants state, the Mississippi Supreme Court has not interpreted the Vaccine Act as barring a parents' individual civil suit for the medical expenses associated with the treatment of a vaccine-injured child. *Cook v. Children's Medical Group, P.A.*, 756 So. 2d 734 (Miss. 1999). In *Cook*, the parents' individual cause of action for medical expenses was upheld, even though the claims of their vaccine-injured child were dismissed for his having failed to timely file a petition under the Vaccine Act. Defendants suggest that the only reason that the parents' claim for medical expenses was upheld therein was because the parents were seeking to recover that which they could have otherwise received pursuant to the Vaccine Act, but for the fraud of the doctors who had hidden the cause of the child's injury. This is plainly wrong. As the *Cook* Court stated:

> Not only is fraud beyond the scope of the Act, <u>but the Cooks themselves would not be under the purview of the Act</u> in this instance. The Cooks, as parents of a child who suffered a vaccine-related injury, may not individually file a petition under the Act; therefore, they may file a claim in state court.

*Id.* at 741.

The Cooks were not barred from seeking reimbursement of medical expenses because their action was one from fraud, but because the individual claims family of family members of those qualified to file pursuant to the Vaccine Act are not governed by it, whether those claims be for loss of consortium, emotional distress or medical expenses incurred by those family members and for which they are responsible. (Emphasis added.)

### E.     Conclusion.

In summary, the terms vaccine-related injury, adulterant and contaminant as referenced in the Vaccine Act are, at the very least, ambiguous and subject to differing interpretations, as is the law as to whether or not thimerosal-related injuries fall within the purview of the Vaccine Act.  Because a court, in ruling upon a Motion For Remand, must resolve such ambiguities in favor of the non-removing party, the Court here should grant plaintiffs' motion and remand this case to the Court of Common Pleas of Philadelphia.

Respectfully submitted,

MILLER & ASSOCIATES

BY:_____
        Michele A. DiMartino, Esquire
        MILLER & ASSOCIATES
        Two Bala Plaza, Suite 300
        Bala Cynwyd, PA 19004
        (610) 660-7779

BY:_____
        Dominique D. Michel, Esquire
        *Pro Hac Vice*
        MILLER & ASSOCIATES
        809 Cameron Street
        Alexandria, VA  22314
        (703) 519-8080

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of foregoing document was served upon the following parties by first class mail, postage prepaid on this 15th day of July, 2002.

E. David Chanin, Esquire
Tannenbaum & Chanin, LLP
1515 Market Street, 10th Floor
Philadelphia, PA 19102
Counsel for Eli Lilly & Company

Andrew See, Esquire
Deborah A. Moeller, Esquire
Shook, Hardy & Bacon, LLP
One Kansas City Place
1200 Main Street
Kansas City, MO 64105-2118
Counsel for Eli Lilly & Company, Inc.

Michael T. Scott, Esquire
Andrea J. Rea, Esquire
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Counsel for Wyeth, Wyeth Laboratories, Wyeth-Ayerst,
Wyeth-Ayerst Laboratories, Wyeth Lederle,
Wyeth Lederle Vaccines and Lederle Laboratories.

Stephen L. Urbanczyk, Esquire
F. Lane III, Esquire
Williams & Connolly LLP
725 12th Street, N.W.
Washington, D.C. 20005
Counsel for Wyeth, Wyeth Laboratories, Wyeth-Ayerst,
Wyeth-Ayerst Laboratories, Wyeth Lederle,
Wyeth Lederle Vaccines and Lederle Laboratories.

Jonathan Dryer, Esquire
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
The Curtis Center, Suite 1130 E
Philadelphia, PA 19106
Counsel for Aventis Pasteur

Nina M. Gussack,Esquire
Eugene J. Kuzinski, Esquire
Pepper Hamilton, LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103-2799
Counsel for Smithkline Beecham Corporation d/b/a
Glaxosmithkline

David R. Iler,Esquire
Fulbright & Jaworski, LLP
1301 McKinney, Suite 5100
Houston, TX 77010
Counsel for Smithkline Beecham Corporation d/b/a
Glaxosmithkline

Stephanie A. Smith, Esquire
Fulbright & Jaworski, LLP
600 Congress Avenue,Suite 2400
Austin, TX 78702-3271
Counsel for Smithkline Beecham Corporation d/b/a
Glaxosmithkline

Joseph E. O'Neil, Esquire
Lavin, Coleman, O'Neil, Ricci,
Finarelli & Gray
Suite 1000
Penn Mutual Tower
510 Walnut Street
Philadelphia, PA 19106
Counsel for Abbott Laboratories

Richard Jospehson, Esquire
Paul R. Elliot, Esquire
Baker Botts LLP
910 Louisiana Street, Suite 2900
Houston, TX 77002-4995
Counsel for Abbott Laboratories

Timothy E. Foley, Esquire
Daniel E. Cummins, Esquire
Foley, Cognetti, Comerford & Cimini
700 Scranton Electric Building
507 Linden Street
Scranton, PA 18503-1666
Counsel for Abbott Laboratories

Denise H. Houghton, Esquire
Cozen & O'Connor
1900 Market Street
Philadelphia, PA 19103
Counsel for Sigma-Aldrich

Raymond Kolts, Esquire
Dean & Kolts
2020 Lakewood Drive, Suite 212
Coeur d' Alene, ID 83814
Counsel for Sigma-Aldrich

Scott Krevans, Esquire
Conroy, Simberg, Ganon, Krevans & Able
3440 Hollywood Blvd., 2nd Floor
Hollywood, FL 33021
Counsel for American International Chemical, Inc.

John W. Dornberger, Esquire
Post & Schell
240 Grandview Avenue
Camp Hill, PA 17011
Counsel for American International Chemical, Inc.

MILLER & ASSOCIATES


BY:_____
            Michel A. DiMartino, Esquire

DATE: July 15, 2002